# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA LAWRENCE LATHAM, CDCR #G-48528,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN MARCUS POLLARD, et al.,<br><br>Defendants. | Case No.: 20cv2177-LAB (BGS)<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915A** |

Plaintiff Joshua Lawrence Latham, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, is proceeding *pro se* with a civil rights Complaint pursuant to 42 U.S.C. § 1983. (Dkt. No. 1). Latham claims that twenty-nine RJD officials—not all named as defendants—in retaliation for filing inmate grievances, violated his First, Eighth, and Fourteenth Amendment rights with false disciplinary charges, theft of his personal property, excessive use of force, cruel and unusual conditions of confinement, and involuntary psychiatric transfers. (*Id.* at 1–14).

The Complaint was accompanied by a motion to proceed *in forma pauperis*

1  ("IFP"). (Dkt. No. 2). Latham later filed exhibits in support of the Complaint (Dkt.
2  No. 5), a request to obtain additional exhibits (Dkt. No. 7), a motion to appoint
3  counsel (Dkt. No. 9), and a second set of exhibits (Dkt. No. 11). After the Court
4  denied Latham's motions and granted an extension of time, he renewed his IFP
5  motion (Dkt. No. 15) and filed a motion for a temporary restraining order (Dkt.
6  No. 17). On May 11, 2021, the Court denied Latham's IFP motion, finding that he
7  had the ability to pay the filing fee, and additionally denied his motion for a
8  temporary restraining order. (Dkt. No. 18).

9  On June 16, 2021, Latham paid the civil filing fee. (Dkt. No. 19). He
10  subsequently filed a third and fourth set of exhibits in support of his Complaint (Dkt.
11  Nos. 21, 23), and filed two declarations containing additional factual allegations in
12  support of his claims, the most recent of which was filed on October 22, 2021. (Dkt.
13  Nos. 25, 28).

## I. SCREENING PURSUANT TO 28 U.S.C. § 1915A

### A. Standard of Review

The Court must conduct an initial review of a plaintiff's complaint under 28 U.S.C. § 1915A, which "mandates early review - 'before docketing [ ] or [ ] as soon as practicable after docketing' - for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016) (quoting 28 U.S.C. § 1915A(a)). "'On review, the court shall . . . dismiss the complaint, or any portion of the complaint,' if it '(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.'" *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017), quoting 28 U.S.C. § 1915A(b).

Screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "The Rule

12(b)(6) standard requires a complaint to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[D]etailed factual allegations" are not required, but there must be more than "labels and conclusions" or "a formalistic recitation of the elements of a cause of action," because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

"Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. However, "where the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Latham's Allegations

The allegations in Latham's Complaint are summarized as follows:

On January 22, 2020, Defendant RJD Clinician Daniel Saltzman falsified medical records in retaliation for Latham having filed inmate grievances. (Dkt. No. 1 at 3). The next day, Defendant Saltzman "held an interdisciplinary treatment team committee action behind the plaintiff's back to send him on an involuntary psychiatric transfer to an area of the prison used to house mentally disturbed inmates in violation of due process and 'Vitek' procedures."[1] (*Id*.). He states that

---

[1] *See Vitek v. Jones*, 445 U.S. 480, 487-94 (1980) (holding that a prisoner's involuntary transfer to a mental hospital implicates a liberty interest protected by federal due process).

the mental health building staff were "aggressive and conducted numerous cell searches out of retaliation," and Defendant RJD Correctional Officer Rutgers was hostile and used profanity. (*Id*.). Latham then "went on a hunger strike for civil rights to obtain evidence for his 602's," but J. Mitchell and K. Kroom, who are not named as defendants or otherwise identified, "falsified hunger strike chronos with inaccurate information." (*Id*. at 4). Latham's mail was held for 22 days "out of retaliation," which prompted him to file additional inmate grievances. (*Id*.).

On February 27, 2020, Defendant RJD Clinician M. Val "held an interdisciplinary treatment team committee action behind the Plaintiff's back to send him on an adverse involuntary psychiatric transfer to the seclusion ward in violation of due process and 'Vitek' procedures." (*Id*.). That same morning, Latham had his cellmate "give a safety concerns note regarding staff" to Defendant RJD Correctional Officer Doyle, and was "called out of his cell to the program office" by Defendants RJD Correctional Officers Hampton and Ruelas. (*Id*.). He was handcuffed and told he was being sent on an involuntary psychiatric transfer, to which he replied he wanted to refuse and wished to speak to the lead psychiatrist. (*Id*. at 4–5). "Plaintiff was then taken to the secluded alleyway on the way into TTA," where he was surrounded by Defendants RJD Correctional Officers Ruelas, Hampton, Sergovia, Manziel, Ash, Woltz, "and a heavyset officer John Doe [whose] name begins with a B." (*Id*. at 5). Latham asked them who was "responsible for orchestrating the incident and Sgt. Sergovia stated he was." (*Id*.). Latham asked Defendant Sergovia to allow him to speak to the lead psychiatrist regarding the transfer, "at which point Sgt. Sergovia and another officer attacked the Plaintiff." (*Id*.). "One grabbed the Plaintiff by the cuffs yanking the metal cuffs deep into the Plaintiff's wrists causing lacerations on both wrists." (*Id*.). They told Latham they were taking him "to R&R to be transferred and yanked the Plaintiff's cuffs all the way up to the back of his head" which caused him to suffer a seizure. (*Id*. at 5–6). "At R&R Officer Sergovia and Woltz roughed the Plaintiff up by shoving

him up against the cage while they placed him in transportation restraints," despite his being "completely compliant." (*Id*. at 6). Latham states his injuries were documented by nurses, and when he told the nurses about his seizure, Defendant John Doe stated, "he didn't have a seizure he just fell to the ground and started spasming." (*Id*.). When Latham asked, "the officers to write an incident report regarding their use of force," he was told "to shut up." (*Id*. at 7). "A Vitek hearing was not conducted" and Latham was placed in the seclusion ward from February 27 to March 6, 2020. (*Id*.).

When Latham's property was returned to him on March 9, 2020, $1000 worth of property was missing. (*Id*.). He was told by Rory Gomez and Everett Gonzalez, who are not named as defendants, that Defendants RJD Correctional Officers Doyle and Rutgers "were throwing items away" and that his property had been left unsupervised in the dayroom, where it was stolen by other inmates. (*Id*.). Latham states that unnamed "appeals coordinators" improperly screened out his 602 inmate grievances regarding that loss of property "in an attempt to steal his property." (*Id*.).

On March 20, 2020, Defendant Clinician Val "retaliated again by putting the Plaintiff up for another involuntary psychiatric transfer." (*Id*. at 8). "A Vitek hearing was conducted" during which Defendant RJD Associate Warden Armenta violated due process by failing "to provide any evidence to substantiate his decision," and "by excluding all the evidence the plaintiff presented proving he is not a harm to himself or others and mentally competent." (*Id*.). Latham states that although he has had "no disciplinary write-ups in years," he was accused of bizarre behavior and "a falsified sexual disorderly conduct allegation was brought up." (*Id*. at 8–9). He states that "falsified prejudicial information" was used "to retaliate," and there was no evidence to support an allegation that he is "gravely disabled." (*Id*. at 9).

On April 24, 2020, Defendant RJD Clinician Maria Diaz "retaliated with another involuntary psychiatric transfer." (*Id*. at 7–8). Latham told Defendant Diaz

he was not a danger to himself or others and is a competent adult but was forced into another involuntary psychiatric transfer to the seclusion ward without "a Vitek hearing." (*Id*. at 8). He was released from the seclusion ward on May 4, 2020, and housed in a cell without a mattress and separated from his property, "leaving him without his basic necessities." (*Id*. at 9).

Latham states that on May 7, 2020, RJD Correctional Officer Armstead, who is not a named defendant, "refused to issue Plaintiff his mail/quarterly package out of retaliation after the Richard J. Donovan staff stole over $1,000 of his property leaving him without his basic necessities." (*Id*.). He states that "the R&R staff further retaliated by mailing his mail/quarterly package back to the vendor," which resulted in "a substantial re-stocking fee and shipping and handling fee" and left Latham "without his basic needs in cruel and unusual conditions." (*Id*. at 9–10).

On May 8, 2002, Defendant RJD Correctional Officer Rodrigues "falsified an administration segregating lock-up order and the Plaintiff was placed in administrative segregation." (*Id*. at 10). The lock-up order contained "vague and inaccurate information in violation of due process." (*Id*.). Defendant RJD Correctional Officer Soriano falsified a rules violation report on an unspecified date with a false allegation of a threat. (*Id*.).

On May 22, 2020, Julie Oldroyd, who is not a named defendant or otherwise identified, "falsified an involuntary medication declaration and petition out of retaliation," which stated that "the benefits of medication are to 'prevent the Plaintiff from filing grievances and lawsuits.'" (*Id*.). On May 29, 2020, Latham filed a 602 inmate appeal regarding that falsified petition—one of "numerous" 602s he filed "against mental health care." (*Id*.). Latham states that at a May 14, 2020 classification hearing, he told the classification committee that the rules violation report was falsified, that there was no threat made, and that it contained a false date, but that RJD Associate Warden Buckel, who is not a named defendant, "got mad at the plaintiff for raising a defense and refused to hear his defense" and

"kicked plaintiff out of the committed room for presenting a defense showing prejudice." (*Id*. at 10–11). Latham was retained in administrative segregation on the false charges until May 28, 2020, when the charges were dropped. (*Id*. at 11). He was released into an unsanitary cell with no bed roll or mattress, "his 15th bed move since filing grievances in mid-January," and on June 1, 2020, was placed in a cell "with a rusted bunk and lockers, feces in the toilet and on the floor." (*Id*.).

On June 8, 2020, Latham "was taken to an interdisciplinary treatment team committee again to transfer the plaintiff to the Departmental State Hospital." (*Id*.). He refused "mental health treatment and requested a Vitek hearing," which was denied. (*Id*.). He states he "has been refusing mental health treatment and the appeals coordinators are providing mental health with the plaintiff's appeal information for the purpose of retaliation." (*Id*. at 11–12). Defendant RJD Clinician Cannon stated that Latham "is being sent to the Departmental State Hospital for alleged 'anxiety,'" despite the fact Latham does not have anxiety and there is no evidence he is a harm to himself or others. (*Id*. at 12).

Latham claims that the actions of Defendants Ruelas, Hampton, Sergovia, Woltz, Manziel, Ash and John Doe amount to the malicious and sadistic use of physical force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, as well as assault and battery under state law. (*Id*. at 12–13). He also claims that the failure of Defendant RJD Warden Pollard to take disciplinary action against them or curb their retaliatory behavior constitutes deliberate indifference to his rights under the First, Eighth and Fourteenth Amendments. (*Id*.). Moreover, Latham claims that the actions of Defendants Saltzman, Val, Diaz and Cannon, along with Oldroyd, in retaliation against him for filing inmate grievances with involuntary psychiatric transfers, violated his rights under the First, Eighth and Fourteenth Amendments. (*Id*. at 13). He claims that the failure of Defendants Chief Medical Supervisor Gates, Chief of Mental Health Greenwood, Appeals Examiners Vazquez and Vernon, Chief Executive Officer

Glynn, and Associate Warden Armenta to take disciplinary actions or curb the pattern of retaliation by RJD mental health officials, constitutes deliberate indifference to Latham's rights under the First, Eighth and Fourteenth Amendments. (*Id*.). He claims the actions of Defendants Doyle, Rutgers, and Hampton of throwing away his property and allowing inmates to steal it amounts to retaliation in violation of the First Amendment. (*Id*.). He claims the actions of Defendants Correctional Officers Rodrigues and Soriano in retaliation against him for filing grievances by filing false disciplinary charges, and the decision by Associate Warden R. Buckles, who is not a named defendant, to retain Latham in administrative segregation, violate his right to due process under the First, Eighth and Fourteenth Amendments. (*Id*. at 13–14).

### C. Application of Screening Standard

#### 1. Property Loss Claims

Latham alleges he was told that Defendants Doyle and Rutgers "were throwing items [of his property] away," that his property had been left unsupervised in the dayroom where it was stolen by other inmates, and that unnamed "appeals coordinators" improperly screened out his 602 inmate grievances regarding the loss of his property "in an attempt to steal his property." (Dkt. No. 1 at 7). Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, due process is not violated by a random, unauthorized deprivation of property if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Ninth Circuit has held that California's tort claim process "provides an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam) (citing Cal. Gov't Code §§ 810–95). Latham cannot state a due process claim based on the authorized loss of his personal property because he has an adequate post-deprivation remedy for his losses. *Hudson*, 468 U.S. at 533; *Barnett*, 31 F.3d at 816-17. Although Latham is unable to state a claim

for property loss, his claim that it was taken in retaliation for filing inmate grievances is discussed below.

The Court dismisses Latham's property loss claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121. Because Latham cannot cure this pleading defect, these claims are **DISMISSED WITHOUT FURTHER LEAVE TO AMEND**. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**2. Due Process Claims**

Latham alleges he was denied due process because he didn't receive a *Vitek* hearing with respect to involuntary psychiatric transfers within RJD on January 22, 2020, February 27, 2020, and April 24, 2020, and to the state mental hospital on June 8, 2020. (Dkt. No. 1 at 3–11). He alleges that he received a *Vitek* hearing for an involuntary psychiatric transfer within RJD on March 20, 2020, but claims there was insufficient evidence presented at the hearing to support the transfer, that evidence which showed he did not present a danger to himself or others was excluded, and that a "falsified sexual disorderly conduct allegation was brought up." (*Id*. at 8–9). He also contends a rules violation report and an administrative segregation lock-up order were falsified. (*Id*. at 9–10).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). With respect to the allegedly falsified rules violation report and the administrative lock-up order, the Complaint lacks sufficient factual allegations regarding the nature of the punishment Latham received, if any, or the conditions in administrative segregation. The Complaint, therefore, does not identify any protected liberty interest. *See Sandin v. Conner*,

515 U.S. 472, 484 (1995) (holding that liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life") (internal citations omitted). Even if Latham can satisfy that pleading requirement, he doesn't have a due process right to be free from false accusations or false reports by prison officials. *See Solomon v. Meyer*, No. 11cv02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no due process right to be free from false disciplinary charges."); *Johnson v. Felker*, No. 12cv02719-GEB KJN P, 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under § 1983."); *Muhammad v. Rubia*, No. 08cv3209-JSW (PR), 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), aff'd by, 453 Fed. App'x 751 (9th Cir. 2011) ("As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983."). In addition, there are no allegations regarding what procedures were followed in connection to the disciplinary proceedings or administrative segregation placement. Latham has, therefore, failed to plausibly allege he did not receive due process which, if there is a protected liberty interest, requires: (1) 24-hour advanced written notice of the charges against him; (2) a written statement from the factfinder which identifies the evidence relied on and the reasons for the action taken; (3) an opportunity "to call witnesses and present documentary evidence in his defense when" doing so "will not be unduly hazardous to institutional safety or correctional goals"; (4) assistance at the hearing if he is illiterate or the matter is complex; and (5) a "sufficiently impartial" factfinder. *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

With respect to Latham's five involuntary psychiatric transfers, he alleges four were conducted without a *Vitek* hearing. The Supreme Court in *Vitek* held that the involuntary transfer of a prisoner to a mental hospital implicates a liberty interest protected by the Fourteenth Amendment's Due Process Clause. *See Vitek*, 445 U.S. at 491-91 ("[I]f the State grants a prisoner a right or expectation that adverse action will not be taken against him except upon the occurrence of specified behavior, 'the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed.'") (quoting *Wolff*, 418 U.S. 558). Latham's Complaint contains conclusory allegations that *Vitek* hearings were not held with respect to four involuntary psychiatric transfers, but it sets forth no factual allegations regarding what procedures, if any, were followed with respect to those transfers. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Latham must set forth factual allegations regarding what procedures, if any, were taken or omitted regarding those transfers. *See Vitek*, 445 U.S. at 494–95 (due process satisfied where a prisoner receives: (1) written notice that a transfer to a mental health facility is being considered; (2) disclosure of evidence relied on for the transfer and opportunity to be heard, present evidence, and confront and cross-examine witnesses; (3) an independent decisionmaker; (4) a written statement by the factfinder which identifies the evidence relied on and the reasons for the transfer; (5) qualified and independent assistance to the prisoner provided by the state; and (6) effective and timely notice of those procedural rights). Although Latham alleges evidence was excluded during his one *Vitek* hearing, (Dkt. No. 1 at 8), allegations regarding evidentiary rulings are insufficient to allege a violation of due process. *See McCloud v. Lake*, No. 18cv01072-JLT (HC), 2019 WL 283709, at *4 (E.D. Cal. Jan. 22, 2019) (evidentiary rulings by prison hearing officers do not constitute a valid basis for alleging impartiality) (citing *Liteky v. United States*, 510

U.S. 540, 555 (1994)) ("Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

Thus, the Court dismisses Latham's due process claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121. Because it is not entirely clear if Latham can cure the pleading defects identified above, these claims are **DISMISSED WITH LEAVE TO AMEND**. *Lopez*, 203 F.3d at 1127; *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)) ("We have an obligation where petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt. In fact, before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.") (citations and quotation marks omitted).

### 3. Eighth Amendment Claims

Latham alleges his Eighth Amendment rights to be free from cruel and unusual punishment and excessive use of force were violated when he was "attacked" by Defendant Correctional Officer Sergovia "and another officer" while handcuffed. (Dkt. No. 5). He alleges that one of those officers yanked his handcuffs, causing them to cut into his wrists, and yanked the cuffs "all the way up to the back of his head," which caused him to have a seizure. (*Id*.). He alleges Defendants Sergovia and Correctional Officer Woltz "roughed [him] up by shoving him up against the cage while they placed him in transportation restraints," which was unnecessary because he was compliant. (*Id*. at 5–6). He also claims that he was released from the isolation ward on May 4, 2020, into a cell without a mattress and separated from his property, leaving "him without his basic necessities." (*Id*.

at 9). He states he was released from the isolation ward on May 28, 2020, into an unsanitary cell with no bed roll or mattress, and on June 1, 2020, was placed in a cell "with a rusted bunk and lockers, feces in the toilet and on the floor." (*Id*. at 11).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, Latham must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03). A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Although Latham alleges that his handcuffs were yanked up behind him, causing them to cut into his wrists, and resulted in him having a seizure, the Complaint fails to identify the person responsible for these actions. Latham alleges it was either Defendant Sergovia or "another officer" who pulled on his handcuffs, but provides no other information regarding the identity of the officer. (Dkt. No. 1 at 5). It is unclear whether Latham can specifically identify the responsible officer. But a defendant is liable under § 1983 only when he or she personally participates in the constitutional deprivation. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). To the extent Latham is unsure who pulled his handcuffs, he must set forth sufficient factual allegations describing the incident to allow the officers to be put on notice of the alleged wrongdoing and defend themselves. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

The Complaint includes claims that Defendants Sergovia and Woltz

unnecessarily "roughed [him] up by shoving him up against the cage while they placed him in transportation restraints," but fails to allege an objectively, sufficiently serious deprivation of his rights. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (finding that "[n]ot every push or shove" violates the constitution). To state a claim based on these allegations, Latham must plausibly allege the Defendants used force which was not just "unnecessary," but also "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Latham has failed to do so. And he has additionally failed to allege whether such use of force injured him in any way. *See Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscious of mankind.'") (quoting *Whitley*, 475 U.S. at 327); *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (quoting *McMillian*, 503 U.S. at 9).

Latham additionally alleges that he was released from the isolation ward on May 4, 2020, into a cell without a mattress and separated from his property, leaving "him without his basic necessities"; he was released from the isolation ward into an unsanitary cell with no bed roll or mattress; and that he was placed in a cell "with a rusted bunk and lockers, feces in the toilet and on the floor." (Dkt. No. 1 at 9, 11). Although "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," the temporary imposition of such conditions does not state a claim absent allegations of a risk of harm. *Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir. 1995). Here, Latham has not alleged how long the unsanitary conditions or lack of a mattress lasted and whether they posed a threat to his health

or safety, nor does he identify what "basic necessities" he was deprived of, how long the deprivation lasted, or which Defendant is responsible for those deprivations.

The Court thus dismisses Latham's Eighth Amendment claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121. Because it's unclear whether Latham can cure the pleading defects identified above, these claims are **DISMISSED WITH LEAVE TO AMEND**. *Lopez*, 203 F.3d at 1127; *Rosati*, 791 F.3d at 1039; *Akhtar*, 698 F.3d at 1212.

### 4. First Amendment Retaliation Claims

Finally, Latham claims that: (1) Defendant Saltzman "falsified the plaintiff's medical records out of retaliation to his grievances," (Dkt. No. 1 at 3); (2) mental health staff were "aggressive and conducted numerous cell searches out of retaliation," (*id.*); (3) his mail was held for 22 days "out of retaliation," (*id*. at 4); (4) Defendant Val "retaliated" when "putting the plaintiff up for another psychiatric transfer," (*id* at 8); (5) "falsified prejudicial information" was used at his *Vitek* hearing "to retaliate," (*id*. at 9); (6) Correctional Officer Armstead "refused to issue Plaintiff his mail/quarterly package out of retaliation," and "the R&R staff further retaliated by mailing his mail/quarterly package back to the vendor," costing Latham shipping, restocking, and handling fees and leaving him "without his basic needs in cruel and unusual conditions," (*id*. at 9–10); (7) Julie Oldroy "falsified an involuntary medication declaration and petition out of retaliation," (*id*. at 10); (8) unnamed "appeals coordinators are providing mental health with the plaintiff's appeal information for the purpose of retaliation," (*id*. at 11–12); (9) the use of excessive force against him constitutes "retaliatory behavior," which Defendants Warden Pollard, Chief Medical Supervisor Gates, Chief of Mental Health Greenwood, Appeals Examiners Vasquez and Vernon, and Chief Executive Officer Glynn failed to stop, (*id.* at 12–13); (10) Defendants Saltzman, Val, Diaz, and Cannon have "retaliate[d] against him with his involuntary psychiatric

transfers," (*id.* at 13); (11) Defendants Doyle, Rugers, and Hampton threw away his personal property and allowed other inmates to steal it "is retaliation to the plaintiff's protected conduct," (*id.*); and (12) "the actions of defendants Rodrigues and Soriano to retaliate to the plaintiff's form 22's and grievances and falsify disciplinary charges," (*Id.*).

"Within the prison context, a viable First Amendment retaliation claim entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (2005). The adverse action need not be an independent constitutional violation. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights."). However, a prisoner must allege a retaliatory motive—that is, a causal connection between the adverse action and his protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2021).

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Id.* Thus, Latham has identified a protected activity with respect to the allegations that Defendant Saltzman retaliated against him for filing inmate grievances, although his remaining allegations don't identify the basis for the retaliation. The Court will liberally construe the Complaint as alleging that the Defendants' actions were taken in response to Latham's protected activity in filing inmate grievances and staff complaints.[2]

---

[2] Latham doesn't identify those specific grievances in the Complaint, but they are contained in his separately filed exhibits. (*See* Dkt. No. 21 at 10-27; Dkt. No. 23 at 3-75).

However, the Complaint doesn't contain sufficient facts to plausibly allege any Defendant acted in retaliation for that protected activity. Rather, Latham merely sets forth conclusory allegations that Defendants acted with a retaliatory motive, which is insufficient to state a claim. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity). Latham must allege *facts* from which a plausible inference can be drawn that Defendants took adverse actions against him in retaliation for his protected activity, not merely conclusory allegations that they acted out of retaliation. *Id.*; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The Court dismisses Latham's retaliation claims against all Defendants for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121. Because it is not entirely clear whether Latham can cure the pleading defects identified above, these claims are **DISMISSED WITH LEAVE TO AMEND**. *Lopez*, 203 F.3d at 1127; *Rosati*, 791 F.3d at 1039; *Akhtar*, 698 F.3d at 1212.

## II.  CONCLUSION

Good cause appearing, the Court:

1.  **DISMISSES** the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915A.

2.  **GRANTS** Latham forty-five (45) days leave from the date of this Order to file an amended complaint which cures the deficiencies of pleading noted in this Order. Latham's amended complaint must be clearly entitled "First Amended Complaint," include Civil Case No. 20cv2177-LAB (BGS) in its caption, and must be complete by itself without reference to his original Complaint. Defendants not named and any claims not re-alleged in the First Amended Complaint will be

considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Latham fails to file a First Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Latham's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

3. **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for use in amending.

**IT IS SO ORDERED**.

Dated: November 17, 2021

*Larry A. Burns*

Honorable Larry Alan Burns
United States District Judge